**E. BRENT BRYSON, ESQ.**
Nevada State Bar No. 004933
**E. BRENT BRYSON, LTD.**
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102
(702) 364-1234 Telephone
(702) 364-1442 Facsimile
Ebbesqltd@yahoo.com
*Attorney for Plaintiff Dawn Hare,*
*Individually, and as the Personal Representative of*
*the Estate of Jason Hare*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAWN HARE, individually, and as the Personal Representative of the ESTATE OF JASON HARE; <br><br> Plaintiff; <br><br> vs. <br><br> CORECIVIC, INC., a Foreign Corporation; CORECIVIC OF TENNESSEE, LLC, a Limited-Liability Company; NEVADA SOUTHERN DETENTION CENTER, a business entity; CHRISTOPHER CHESTNUT, individually, and in his official capacity as Warden of Nevada Southern Detention Center; DOES I-X; and ROES XI-XX, inclusive; <br><br> Defendants. | CASE NO.: 2:25-cv-00991- RFB-EJY <br><br> **FIRST AMENDED COMPLAINT** <br> (JURY TRIAL DEMANDED) |

COMES NOW, Plaintiff, DAWN HARE, individually, and as the Personal Representative of the ESTATE OF JASON HARE (hereinafter collectively "Plaintiff"), by and through her counsel, E. Brent Bryson, Esq. of the law offices of E. Brent Bryson, Ltd., and as and for her **First Amended Complaint** against Defendants, and each of them, allege and complain as follows:

1

**INTRODUCTION**

1.      This action is brought as a result of Defendants, and each of them, engaging in conduct that led to the death of Jason Hare at its facility Nevada Southern Detention Center in Nye County, Nevada.

**DEMAND FOR JURY TRIAL**

2.      Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands trial by jury on all issues raised in this action.

**JURISDICTION AND VENUE**

3.      This Federal District Court has jurisdiction over this civil tort action pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship of Plaintiff and the Defendants.

4.      This Federal District Court has jurisdiction over this civil tort action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00.

5.      This Federal District Court has venue over this civil tort action pursuant to 28 U.S.C. § 1391(b) as the occurrence giving rise to this case took place in this district.

**THE PARTIES**

6.      That Plaintiff DAWN HARE is the mother and heir of Decedent JASON HARE and was and is at all relevant times hereto a resident of the State of Utah.

7.      That Plaintiff DAWN HARE has been appointed as the Personal Representative of the ESTATE OF JASON HARE and was and is at all relevant times hereto a resident of the State of Utah.

8.      That Defendant CORECIVIC, INC. (hereinafter Defendant "CoreCivic"), is a Foreign Corporation incorporated upon information and belief under the laws of the State of Maryland, and at all times relevant hereto was doing business in Nye County, Nevada.

2

9.      That Defendant CORECIVIC OF TENNESSEE, LLC. (hereinafter Defendant "CoreCivic of TN"), is a Limited-Liability Company incorporated upon information and belief under the laws of the State of Maryland, and at all times relevant hereto was doing business in Nye County, Nevada.

10.     That Defendant CHRISTOPHER CHESTNUT was at all times relevant hereto the Warden of Nevada Southern Detention Center (hereinafter Defendant "CHESTNUT") in Nye County, Nevada and is sued in his individual and official capacity.

11.     That Defendant DOES I through X, inclusive, assisted in, participated in, facilitated, permitted or allowed the wrongful conduct set forth herein.  Plaintiff will ask leave of this Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further ask leave to join said Defendants in these proceedings.

12.     That Defendant ROES XI through XX, inclusive, are supervisory and/or policy making officials of the CoreCivic Defendants, as yet unidentified, who have adopted, implemented, maintained or tolerated policies which permitted, facilitated or allowed the wrongful conduct set forth herein to occur or who have negligently trained, hired or supervised officers, agents or employees of the CoreCivic Defendants.  Plaintiff will ask leave of this Court to insert the true names and capacities of such Defendants when the same has been ascertained and will further ask leave to join said Defendants in these proceedings.

13.     That Plaintiff is informed, believes, and thereon alleges that the DOES/ROES Defendants are responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged.

///

3

14.    That at all times pertinent hereto, Defendants, and each of them, were the agents, servants, employers and/or employees of each other and were acting within the course and scope of said relationship.

## FACTS COMMON TO ALL CAUSES OF ACTION

15.    That Defendant CORECIVIC, INC. and Defendant CORECIVIC OF TENNESSEE, LLC. (hereinafter collectively referred to as the "CoreCivic" Defendants) own, occupy, operate, control, maintain, and/or manage certain real property located at 2190 E Mesquite Ave, Pahrump, NV 89060, commonly known as Nevada Southern Detention Center (hereinafter "NSDC").

16.    That upon information and belief, the U.S. Bureau of Prisons (hereinafter "BOP") contracts with private prisons.

17.    That upon information and belief, the BOP has a contract with CoreCivic to house BOP inmates at the NSDC in Pahrump, Nevada.

18.    That CoreCivic is one of the largest private prison companies in the United States and has a long and extensively documented history of failing to provide a safe and secure environment for its in-custody population.

19.    That the frequency and severity of drug usage at NSDC by in-custody persons has raised serious concerns about the safety and security measures in place at NSDC, as well as raised concerns about the effectiveness and transparency of the Correctional Officers and Supervisory personnel.

20.    That on December 28, 2021, Plaintiff's son JASON HARE was taken into custody by the State of Utah due to pending State charges.  He remained safely in Utah State custody for almost two years without a drug incident.

21.     That NSDC is a closed environment.  The individuals that are detained at NSDC are searched, strip-searched and their body cavities are searched prior to the detainees being admitted into the facility. Visitation with loved ones or friends is by telephonic communication only.  Mail to in-custody population is opened and searched before the mail is given to the in-custody population.  Only persons working for NSDC or approved by NSDC are allowed entry into this closed environment.

22.     That on June 7, 2023, JASON HARE was transferred to the Nevada Southern Detention Center ("NSDC") located at 2190 E Mesquite Ave, Pahrump, Nevada 89060.

23.     That on June 11, 2023, four days later, JASON HARE was found unresponsive in the second dormitory area where the general population is housed.

24.     That it is asserted, upon information and belief, that Correctional Officers at NSDC did not conduct timely safety checks on the in-custody population which led to the death of the Decedent.

25.     That surveillance video on June 11, 2023, shows that Decedent grabbed an item from a red book of another inmate at 0036 and that no follow-up by Detention Officers or Surveillance Officers was made to determine what the item was.

26.     That at 0038, the Decedent arrived back at his bunk G4-024B from the detainee's bunk from which the Decedent took the item.  No follow-up investigation was conducted by Correctional Officers or Surveillance Officers.

27.     That at 0039, the Decedent went to the restroom stall and returned to his bunk G4-024B at 0045.

28.     That at 0046, the Decedent arrived at bunk 24A and began to take off his uniform top.  No investigation was done by Correctional or Surveillance Officers as to why

the Decedent was at a bunk of another detainee.

29.     That at 0047, the Decedent took a drink out of a cup that was on bunk 24A which was not the Decedent's assigned bunk and began to take off his socks and roll up his pant legs.  No investigation or safety check was done by Correctional or Surveillance Officers into Decedent's behavior.

30.     That at 0055, another detainee hangs a brown cloth on bunk 24A and sits down and gets back up when a detention officer shows up. No follow-up investigation was done by Detention Officers or Surveillance Officers as to why the brown cloth was draped from bunk 24A.

31.     That the Decedent continues to lay at bunk 24A with his right knee up from 0053 to 0644 despite the mattress of bunk 24A being tapped by another detainee at 0343.  No investigation was done by Detention Officers or Surveillance Officers.

32.     That at 0530, a tray cart comes into the G4 unit and the G4 population makes its way towards the unit entrance door.  The Decedent continues to lay down with his right knee up.  No investigation is made into the behavior by the Decedent by Detention or Surveillance Officers.

33.     That at 0654 through 0810, the Decedent continues to lay in the bunk with movement, and no safety check is noted by Surveillance Officers.

34.     That at 0811, a wet brown cloth, sheet or pillowcase falls to the ground.  No investigation or safety check was done by Detention Officers or Surveillance Officers.

35.     That at 0813 until 0915, the Decedent can be seen laying on his back and breathing.  No safety check or investigation by Detention Officers or Surveillance Officers is noted.

6

36.     That at 0917 through 0925, the Decedent is seen laying on his back and not breathing.  No investigation or safety check was done by detention or surveillance personnel.

37.     That also at 0925, other detainees grab an item but do not touch the Decedent and one detainee grabs a brown cloth sheet or pillowcase that was wet and that had previously fallen and placed it on the Decedent's legs.  No investigation or safety check was done by detention or surveillance personnel.

38.     That at 0932, other detainees walk up to the Decedent and look at the Decedent and one detainee touches the Decedent who is still not breathing.  No investigation or safety check was done by Detention or Surveillance Officers.

39.     That at 0933, detainees walk toward the day room with one detainee staying at bunk 24 and another detainee looks at the Decedent and then walks towards the restrooms. No investigation or safety check was done by Detention or Surveillance Officers.

40.     That from 0934 through 0937, various detainees look at the Decedent and walk away.  No investigation or safety check of the Decedent was done by Detention or Surveillance Officers.

41.     That from the time the Decedent could be seen not breathing at 0917 until a detention counselor and detention officer arrived at the bunk that the Decedent was in at 0938 (21 minutes) no detention officer or surveillance officer conducted a safety check or investigation of the Decedent.  Medical staff did not arrive on scene until an RN responded at 0939.

42.     That from 0038 until 0938, surveillance does not show any safety check in the area that the Decedent was housed in.

///

7

43. That upon information and belief, safety checks were to be conducted on the population every fifteen (15) minutes.

44. That on July 18, 2023, the Clark County Coroner determined that JASON HARE died on June 11, 2023, as a result of Acute Combined Drug Toxicity (Methamphetamine, Amphetamine, Fentanyl) after concurrent use of methamphetamine and fentanyl.

45. That due to NSDC's security measures and policies and procedures, only an employee or other person authorized to enter the facility could have polluted the closed environment with drugs.

## FIRST CAUSE OF ACTION

### (Wrongful Death)

46. That Plaintiff repeats and realleges the allegations contained in the paragraphs 1 through 45 above as though fully set forth herein by reference.

47. That the death of Jason Hare was caused by the conduct of personnel from the "CoreCivic" Defendants in failing to provide a safe and secure environment for the Decedent and other in-custody detainees.

48. That CoreCivic's Code of Ethics states on page 39 as follows:

"**Maintaining Secure and Contraband-Free Facilities**
Contraband endangers everyone at CoreCivic – residents, staff and visitors alike. Each of us has a duty to help make sure our facilities are free of contraband, so you must:
    • Never bring contraband into our facilities.
    • Report any suspicion of contraband immediately.
    • Not do anything that would allow others to bring in or transfer contraband.
    • Not assist with contraband or look the other way.
**Examples of Contraband**
    • Firearms, explosives and weapons
    • Prohibited tools
    • Unauthorized equipment, including restraints and tactical equipment
    • Illegal drugs, controlled substances, alcohol and common products used as intoxicants or hallucinogens, including unauthorized medications

8

• Cash and cash equivalents
• Unauthorized nicotine products
• Unauthorized electronics and accessories, such as flash drives, cell phones, pagers, batteries and chargers" [Sic].

49.    That, specifically, personnel from CoreCivic allowed the introduction of illegal drugs into the closed environment due to their intentional or negligent conduct.

50.    That as a direct and proximate result of all Defendants' intentional and/or negligent acts, Jason was provided drugs which he ingested, ultimately dying.

51.    That it is further asserted, upon information and belief, that CoreCivic personnel failed to conduct timely safety checks of its in-custody population which could have prevented the death of the Decedent.

52.    That it is further asserted, upon information and belief, that the Decedent Jason Hare did not receive timely and appropriate medical care after it was seen that the Decedent was not breathing at 0917.  Medical staff did not arrive on scene until an RN responded at 0939.

53.    That Dawn Hare is a proper heir of the Decedent as his mother.

54.    That Dawn Hare has been installed as the personal representative of Jason Hare's estate;

55.    That as a direct and proximate result of all Defendants' conduct, Plaintiffs suffered damages, the exact amount to be proven at trial.

56.    That pursuant to NRS 41.085, Plaintiff is entitled as an heir to recover damages for grief or sorrow, loss of probable support, companionship, comfort and consortium, the exact amount to be proven at trial.

57.    That pursuant to NRS 41.100(3), Plaintiff as personal representative is entitled to the deceased Plaintiff's claims for pain and suffering, and pursuant to NRS 41.085(4), for

9

punitive damages if awarded, funeral expenses and any damages the Decedent would have recovered if the Decedent had lived, the exact amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Negligence)

58.     That Plaintiff repeats and realleges the allegations contained in the paragraphs 1 through 57 above as though fully set forth herein by this reference.

59.     That at all times mentioned herein, Defendants were subject to a duty of care to provide personal safety to those residents who are in the care and custody of CoreCivic by keeping illegal drugs out of the closed environment facility, providing timely and appropriate medical attention to its in-custody population, and conduct timely safety checks on its in-custody population.  The conduct of the detention and surveillance officers as set forth herein did not comply with the standard of care to be exercised by reasonable prison and/or jail personnel and thus, the detention and surveillance officers, and each of them, breached their duty of care.

60.     That at all times mentioned above, the persons supplying the drugs to the Decedent were actively employed by, or under the supervision and control of CoreCivic and its detention and surveillance officers.  Therefore, CoreCivic is vicariously liable for the aforementioned acts of the detention and surveillance officer personnel because the conduct occurred during the course and scope of their employment with CoreCivic.

61.     That as a direct and proximate result of the detention and surveillance officers' negligence as herein alleged, and each of them, Plaintiff has been damaged, the exact amount to be proven at trial.

///

10

62. That pursuant to NRS 41.085, Plaintiff is entitled as an heir to recover damages for grief or sorrow, loss of probable support, companionship, comfort and consortium.

63. That pursuant to NRS 41.100(3), Plaintiff as personal representative is entitled to the deceased Plaintiff's claims for pain and suffering, and pursuant to NRS 41.085(4), for punitive damages if awarded, funeral expenses and any damages the Decedent would have recovered if the Decedent had lived.

## THIRD CAUSE OF ACTION

### (Negligent Supervision and Training)

64. That Plaintiff repeats and realleges the allegations contained in the paragraphs 1 through 63 above as though fully set forth herein by this reference.

65. That former Warden Christopher Chestnut had prior notice of illegal drugs being smuggled into its closed environment and facility at NSDC. Defendant Warden Christopher Chestnut took no meaningful and reasonable steps to train its detention and surveillance officers on detecting those persons who smuggle in illegal drugs into NSDC. Additionally, Warden Chestnut and detention and surveillance supervisory personnel failed to properly supervise detention and surveillance officers to conduct timely safety checks on its in-custody population.

66. That upon information and belief, Warden Chestnut and CoreCivic failed to train its detention and surveillance officers to identify safety issues and to render timely and appropriate medical care and response to detainees who ingested illegal drugs.

67. That Warden Chestnut and CoreCivic detention and surveillance officers have a mandatory duty to properly and adequately train and supervise detention and surveillance

11

officers and personnel under their control so as to avoid the unreasonable risk of harm to its in-custody population.

68. That Warden Chestnut and CoreCivic failed to take necessary, appropriate or adequate measures to prevent illegal drugs from being introduced into its closed environment facility.

69. That as a direct and proximate result of former Warden Chestnut and supervisory detention and surveillance officers' conduct as herein alleged, Plaintiffs have been damaged, the exact amount to be proven at trial.

70. That pursuant to NRS 41.085, Plaintiff is entitled as an heir to recover damages for grief or sorrow, loss of probable support, companionship, comfort and consortium.

71. That pursuant to NRS 41.100(3), Plaintiff as personal representative is entitled to the deceased Plaintiff's claims for pain and suffering, and pursuant to NRS 41.085(4), for punitive damages if awarded, funeral expenses and any damages the Decedent would have recovered if the Decedent had lived.

## ATTORNEY FEES

72. That Plaintiffs have been required to retain the law offices of E. Brent Bryson, Ltd. to prosecute this action and Plaintiffs are thereby entitled to reasonable attorney's fees, costs and expenses incurred herein to prosecute this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff expressly reserves the right to amend this Complaint at time of trial to include all items of damages not yet ascertained, and prays for judgment against Defendants, and each of them, as follows:

1. That pursuant to NRS 41.085, Plaintiff is entitled as an heir to recover damages for grief or sorrow, loss of probable support, companionship, comfort and consortium;

2.  That pursuant to NRS 41.100(3), Plaintiff as personal representative is entitled to the deceased Plaintiff's claims for pain and suffering, and pursuant to NRS 41.085(4), for punitive damages if awarded, funeral expenses and any damages the Decedent would have recovered if the Decedent had lived;

3.  For an award of attorneys fees and costs of suit;

4.  For prejudgment interest as provided by law; and

5.  For such other and further relief as the Court may deem just or proper.

DATED this 30th day of March, 2026.

**E. BRENT BRYSON, LTD.**


*/s/ E. Brent Bryson, Esq.*
**E. BRENT BRYSON, ESQ.**
Nevada State Bar No. 004933
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102
(702) 364-1234 Telephone
(702) 364-1442 Facsimile
Ebbesqltd@yahoo.com
*Attorney for Plaintiff Dawn Hare,*
*Individually, and as the Personal*
*Representative of the Estate of Jason Hare*

13

## CERTIFICATE OF SERVICE AND MAILING

I hereby certify that on the 30th day of March, 2026, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** was served via the U.S. District Court's CM/ECF system on all parties currently on the electronic service list in this case, and by depositing a true copy thereof in the United States mail, postage prepaid thereon, addressed to:

**STRUCK LOVE ACEDO, PLC**
Ashlee B. Hesman, Esq.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Tel.: (480) 420-1600
Fax: (480) 420-1695
AHesman@strucklove.com

**HARPER | WIXOM**
James E. Harper, Esq.
1935 Village Center Circle
Las Vegas, Nevada 89134
Phone: (702) 252-5002
Fax: (702) 252-5006
Email: eservice@harperwixom.com
*Attorneys for Defendants CoreCivic, Inc. and*
*CoreCivic of Tennessee, LLC., and*
*Warden Christopher Chestnut*

       /s/Ronald J. Hirsch
       An Agent and/or Employee of E. BRENT BRYSON, LTD.

14